UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:17-CR-041 |
| | ) | |
| RUTH ANN OLIVER | ) | |

## MEMORANDUM AND ORDER

Now before the Court is the defendant's renewed *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i). [Doc. 370].[1] The United States has responded in opposition [docs. 387, 388] and the defendant has not replied within the time allowed by this Court's Local Rules. For the reasons that follow, the defendant's motion will be denied.

### I. BACKGROUND

In December 2017, Judge Reeves sentenced the defendant to a below-guidelines term of 92 months' imprisonment for conspiring to distribute methamphetamine. The defendant is presently housed at FMC Lexington with a projected release date of November 14, 2023. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Sept. 13, 2021). She now moves for compassionate release due to the COVID-19 pandemic, type 2 diabetes, morbid obesity, asthma, an abdominal hernia, her status as a former smoker, and her rehabilitative efforts.

---

[1] A previous motion was denied by the Honorable Pamela L. Reeves, with leave to renew, for failure to exhaust administrative remedies. [Docs. 353, 356].

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on her behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to

2

compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[2]

In *Jones*, the Sixth Circuit observed that "[d]istrict courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." 980 F.3d at 1114. Subsequently, in *Elias*, the appellate court "clarified" that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." 984 F.3d at 519.

## A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Docs. 370; 387, ex. 1]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

## B. Merits

As mentioned above, in support of her motion the defendant cites the COVID-19 pandemic, type 2 diabetes, morbid obesity, asthma, an abdominal hernia, her status as a former smoker, and her rehabilitative efforts.

At the defendant's correctional institution, there are currently one inmate and nine staff positive for COVID-19, with 601 inmates and 89 staff having recovered, and nine inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Sept.

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

13, 2021). These numbers are historically significant, but the Court simultaneously notes that outside the prison setting our nation remains in grave crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"). Additionally, at the defendant's prison 332 staff and 919 inmates have now been fully vaccinated. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Sept. 13, 2021). The defendant previously contracted COVID-19 and has since been vaccinated. [Doc. 388].

BOP medical records confirm that the defendant has been diagnosed with, and receives care for, type 2 diabetes, morbid obesity, asthma secondary to her COVID infection, and an abdominal hernia. [*Id.*]. It appears that she is a former smoker. [*Id.*]. Surgery is indicated for the hernia, but as of October 13, 2020, physician records state that she was "not having significant pain or debility from the hernia." [*Id.*]. Her weight made her "a poor surgical candidate." [*Id.*]. The doctor counseled her on the necessity of diet and exercise and "explained what will happen if she keeps gaining weight and eating the same things, namely, additional diabetes medications, insulin injections, eventual

4

blindness, kidney failure, loss of lower limbs, and other things she would like to avoid." [*Id.*].

Type 2 diabetes, morbid obesity, and smoking history are conditions presently considered to possibly increase the risk of severe illness from COVID-19, and the same is true for moderate-to-severe asthma. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 13, 2021).[3] The BOP categorizes the defendant as Care Level 1. [Doc. 370; 387, ex. 2]. "Care Level 1 inmates are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12 months." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Sept. 13, 2021). Despite that classification, in light of the defendant's combination of health conditions the Court will presume—without finding, and for purposes of the instant motion only—that the defendant has carried her burden of establishing extraordinary and compelling reasons for compassionate release.

The Court finds, however, that the defendant's release would not be consistent with 18 U.S.C. § 3553(a). Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, the Court has considered the defendant's arguments (individually and in combination) along with the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to that statute,

---

[3] The record does not clearly indicate that the defendant's post-COVID asthma is either moderate or severe.

5

Case 3:17-cr-00041-RLJ-CCS   Document 391   Filed 09/13/21   Page 5 of 9   PageID #: 2988

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

  (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

    (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

  . . .

(5) any pertinent policy statement—

  (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

6

> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court appreciates that the defendant has incurred no disciplinary sanctions while serving her sentence, and that she is participating in vocational and educational programming to the extent that such training is available during the pandemic. [Doc. 370; 387, p. 10]. As Judge Reeves did previously, the undersigned encourages the defendant to remain on that path. The Court also observes that, when sentenced in this case, the defendant had only one prior conviction—for driving while impaired in 1998. [Presentence Investigation Report, doc. 123, ¶ 46].

The Court also fully understands that the defendant is unhappy being incarcerated, as evidenced by the volume of motions she has filed asking for early release. [Docs. 319, 321, 327, 348, 352, 353, 355, 379]. What the defendant's arguments fail to take into account, however, is the severity of her offense in this case.

The defendant was far from a low-level street dealer. Over a span of 15 months, she admittedly conspired to distribute between 1.5 and 4.5 kilograms of actual methamphetamine. [Doc. 123, ¶¶ 20, 23]. She sold meth from her home and stored kilograms quantities for a codefendant. [*Id.*, ¶¶ 21, 24]. Numerous codefendants were observed at her home. [*Id.*, ¶ 22]. On one occasion, the defendant distributed 55.41 grams of actual methamphetamine with 100% purity to a coconspirator. [*Id.*, ¶ 24]. That

transaction *alone* requires a mandatory minimum sentence of 10 years. *See* 21 U.S.C. § 841(b)(1)(A). The defendant admittedly distributed ounce and half ounce quantities to other customers and coconspirators. [Doc. 123, ¶ 25]. For her *substantial* role in this conspiracy, she received a sentence of only 92 months.

Of additional concern is the defendant's substance abuse history. In particular, she was addicted to methamphetamine for 15 years. [*Id.* ¶ 58]. According to BOP medical records, she also cooked methamphetamine for "years." [Doc. 388]. While she has completed the BOP's non-residential drug abuse treatment program and might now be on the waiting list for RDAP, as of June 2020 she had "no interest" in that program. [Doc. 370; 387, ex. 2].

The Court, again, appreciates the defendant's rehabilitative efforts, her BOP disciplinary record, and her single prior *conviction*. Those facts, however, are outweighed by the defendant's significant role in this conspiracy and the immeasurable amount of harm that she caused. More than two years of actual time remain on a sentence that, in the Court's experience, was remarkably low when compared to the severity of the crime. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). Compassionate release on the facts of this case would not reflect the seriousness of the offense of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

## III. CONCLUSION

As provided herein, the defendant's renewed motion for compassionate release [doc. 370] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge