UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:17-CR-041 |
| | ) | |
| RUTH ANN OLIVER | ) | |

### **MEMORANDUM OPINION**

In 2020, the Honorable Pamela L. Reeves denied, for failure to exhaust administrative remedies, the defendant's first *pro se* motion for compassionate release under 18 U.S.C. 3582(c)(1)(A)(i). [Doc. 356]. In 2021, the undersigned denied the defendant's second *pro se* compassionate release motion on its merits. [Doc. 391].

Now before the Court are the defendant's third and fourth *pro se* compassionate release motions, filed in May and June of 2022. [Docs. 408, 412]. The United States has responded in opposition. [Docs. 413, 414, 415].

The defendant's pending motions have been held in abeyance by this Court since June 23, 2022, because, on that date, Federal Defender Services of Eastern Tennessee ("FDSET") filed notice that it was reviewing the defendant's case for compassionate release eligibility. [Doc. 411]. On October 20, 2022, FDSET filed notice that it would not be submitting any additional pleadings on this defendant's behalf. [Doc. 419].

The pending *pro se* motions are now ripe for the Court's review. As provided herein, those motions will be granted.

## I. BACKGROUND

In December 2017, Judge Reeves sentenced the defendant to a below-guidelines term of 92 months' imprisonment for conspiring to distribute methamphetamine. The defendant is presently housed at FPC Alderson with a projected release date of November 14, 2022. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Oct. 24, 2022). She now moves for compassionate release due to an abdominal hernia and because her mother "needs me home."[1]

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

---

[1] Additionally, the defendant raises arguments pertaining to her conditions of confinement including the adequacy of her medical care. Such claims might be cognizable, *see, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in the prisoner's district of confinement after the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(a). It is unclear whether this defendant has fully exhausted her administrative remedies on those claims, and she is not incarcerated in this judicial district. These issues will not be discussed further herein.

R 2

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on her behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[2] In *Jones*, the Sixth Circuit observed that "[d]istrict courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." 980 F.3d at 1114.

### A. Exhaustion

The defendant submitted a compassionate release request to the BOP based in part on her abdominal hernia. [Doc. 370, p. 3]. The Court thus has authority under § 3582(c)(1)(A) to address that issue. *See Alam*, 960 F.3d at 832.

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

R                                              3
Case 3:17-cr-00041-RLJ-CCS   Document 420   Filed 10/24/22   Page 3 of 8   PageID #: 3883

There is, however, no evidence that the defendant has requested compassionate release from the BOP based on her mother's needs. As such, the United States argues that the Court does not have jurisdiction to review that latter claim. *See United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021) ("[A]n inmate is required to present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court."). This Court need not resolve that dispute because, as conceded by the United States, the Court is free to reject a basis for compassionate release even if the mandatory exhaustion requirement has not been satisfied. *See Elias*, 984 F.3d at 519; *Williams*, 987 F.3d at 702. As will be apparent in the discussion that follows, the purported needs of the defendant's mother are not a factor which has contributed to the Court's compassionate release decision in this case.

### B. Merits

In its review of the defendant's second motion for compassionate release, the Court "presume[d]—without finding, and for purposes of [that] motion only—that the defendant has carried her burden of establishing extraordinary and compelling reasons for compassionate release." [Doc. 391, p. 5]. In ruling on the current motions, however, the Court will decide that issue on its merits.

The Court does not find extraordinary and compelling grounds for the defendant's release based on her mother's needs. The defendant claims that her mother fears for her [the defendant's] health and safety. [Doc. 408, p. 2]. She claims that her mother has had multiple sclerosis for more than 30 years and "needs me home." [*Id.*, p. 3]. Conversely, the mother (who lives in Kodak, Tennessee) was able to drive from Kodak to Lexington,

Kentucky, to transport the defendant to her current prison in West Virginia. [Docs. 408, 410]. In June of this year, the defendant informed this Court that her mother is willing and able to "come pick me up [from Alderson, West Virginia]" and "get me to the hospital [and] help with my aftercare." [Doc. 412]. On the present record, the defendant has not shown that her mother is in such a poor condition as to provide an extraordinary and compelling basis for compassionate release, nor has the defendant shown herself to be the only available caregiver.

Turning to the defendant's own health, the Court has previously noted that the defendant has indeed been diagnosed with an abdominal hernia. [Doc. 391, p. 4]. "Surgery is indicated for the hernia, but as of October 13, 2020, physician records state that she was 'not having significant pain or debility from the hernia.' Her weight made her 'a poor surgical candidate.'" [*Id.*] (internal citations omitted).[3]

In February of this year, the hernia was noted to be "about the size of a softball." [Doc. 415]. In April, the defendant sought medical care, reporting that she had aggravated the hernia while working. [*Id.*]. A "large protruding hernia" was noted, with associated abdominal tenderness and apparent pain. [*Id.*]. The physician "reduced" the hernia and deemed it "not [in] an emergent state." [*Id.*]. In May, the hernia's size had increased, as had the associated pain. [*Id.*].

The defendant's 2022 medical complaints regarding her documented "softball size" hernia have been consistent. [*Id.*; doc. 410]. She has also filed a September 2021 photograph of herself. [Doc. 410]. The defendant is fully clothed in that picture, but the

---

[3] Between September 2020 and May 2022, the defendant has lost 32 pounds. [Docs. 388, 415].

hernia is nonetheless apparent. The Court finds that the defendant's worsening hernia (with no relief in sight) constitutes an extraordinary and compelling ground for compassionate release on the particular facts of this case.

The Court also finds that the defendant's release is now consistent with 18 U.S.C. § 3553(a). In accordance with § 3582 and the Sixth Circuit's holding in *Jones*, the Court has considered the defendant's arguments along with the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to that statute,

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments

R                                      6

Case 3:17-cr-00041-RLJ-CCS   Document 420   Filed 10/24/22   Page 6 of 8   PageID #: 3886

> have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
> . . .
>
> (5) any pertinent policy statement—
>
> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

A mere three weeks remain on this defendant's sentence, and the record shows that she is in need of significant medical care. The Court sees no point in further delay of that care. The Court has previously recognized the defendant's serious involvement in this conspiracy [doc. 391, p. 7, 8] but she has now almost served the entirety of her sentence. As noted in the Court's prior memorandum, the defendant has no significant criminal history and—but for some record discrepancies regarding her willingness to participate in the BOP's RDAP program—she has been a model inmate. [*Id.*, p. 7]. The BOP scores her as a minimum-security inmate with a minimum risk of recidivism. [Doc. 414, Ex. 1].

## III. CONCLUSION

As provided herein, the defendant's renewed motions for compassionate release [docs. 408, 412] will be granted. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge

R 8